UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAMAL KITTRELL,

        Petitioner,

v.                                 CASE NO. 2:08-CV-11256
                                 HONORABLE AVERN COHN

SUSAN DAVIS,

        Respondent.

_____/

**MEMORANDUM AND ORDER**
**DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS**
**AND**
**DENYING A CERTIFICATE OF APPEALABILITY**

**I. Introduction**

This is a habeas case under 28 U.S.C. § 2254. Michigan prisoner Kamal Sydney

Kittrell ("Petitioner") was convicted of armed robbery, Mich. Comp. Laws § 750.529,

felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a

firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, following a

jury trial in the Wayne County Circuit Court in 2004. He was sentenced to 18 to 50

years imprisonment on the armed robbery conviction, a concurrent term of two to five

years imprisonment on the felon in possession conviction, and a consecutive term of

two years imprisonment on the felony firearm conviction.

Petitioner raises claims concerning the jury instructions, a missing witness and

the lack of a missing witness instruction, the validity of his traffic stop and arrest, the

sufficiency of evidence for the weapons offenses, the admission of the gun recovered

from the vehicle, the denial of his request for self-representation, the denial of his request for a handwriting expert, the denial of his request for substitute counsel, the effectiveness of trial counsel, the denial of a pretrial identification hearing, the lack of compliance with a discovery order, and the conduct of the prosecutor. Warden Susan Davis ("Respondent") has filed an answer to the petition contending that it should be denied. For the reasons that follow, Petitioner is not entitled to habeas relief and denies the petition. The Court also denies a certificate of appealability.

## II. Factual Background and Procedural History

Petitioner's convictions arise from the armed robbery of the Black Orchid flower shop in Detroit, Michigan during the afternoon on July 2, 2004. Petitioner was tried with co-defendant Rafael Cortez Ferguson.

The victims of the robbery testified at trial. Flower shop owner Norma Davis testified that two men, whom she identified as Petitioner and co-defendant Ferguson, entered her shop around 3:00 p.m. Petitioner came in first, put a greyish-black revolver to her head, and demanded money. She had not had any customers that day so she gave him the start-up money for the cash register, about $80 in bills and change, which she placed in a bag. She begged him not to kill her. Ferguson then came into the back of the store. Petitioner told him to get the other woman, Davis' employee Maeozie Anthony. Ferguson ran out the back door, but returned and said that Anthony was gone. Petitioner then instructed Davis to leave the shop, so she ran out the front door.

Davis testified that she gave the police a description of the robber who held the gun to her head shortly after the incident. She described him as a dark-skinned male in his 30s, 5 feet 11 inches tall, 200 pounds, with no facial hair, and wearing a white shirt.

2

She described the second robber as having a medium complexion, but provided no further details. Davis also testified that she identified Petitioner as one of the robbers in a live lineup at the Wayne County Jail on July 12, 2004 and identified Ferguson as the other robber in a photographic array at the flower shop on July 21, 2004. She also identified both men as the perpetrators during a prior court proceeding. She had "no doubt" in her mind about those identifications.

Flower shop employee Maeozie Anthony testified that she was at the counter when two men entered the shop and asked about roses. She went to the cooler. As she exited the cooler, she heard Davis pleading not to be shot and realized the store was being robbed. Anthony fled the building, ran to the street yelling for help, and got someone at a car wash to call 911. She then saw Davis run from the shop unharmed and saw two men flee in a white or cream car. She provided descriptions of the men to the police. She described the first man as dark-skinned with cut hair but not bald, no beard, about her height, 180 to 200 pounds, maybe 35 years old, and wearing a t-shirt. She described the second man as lighter, taller, and clean shaven, which she testified meant no beard. At trial, Anthony identified Petitioner as one of the robbers, but could not identify the other robber. She also identified Petitioner as one of the robbers during a pre-trial lineup, but identified someone other than co-defendant Ferguson in a photographic array.

Witness Keith Sanford testified that he saw two black men flee the flower shop and get into a waiting white or gray Chrysler driven by a third man. He said that one of the men was dark and the other light and one was thin and the other stocky, but could not identify them. Sanford also testified that he followed the car for a few blocks and

3

recorded the license plate number, which he gave to police.

Police officers testified about their investigation of the crime. The police testimony indicated that officers observed a car matching the description and license plate of the getaway car the day after the robbery. The police stopped the vehicle. James Mitchell, the car owner, was driving the vehicle. Petitioner was in the front passenger seat and co-defendant Ferguson was in the back passenger seat. The police found and confiscated a .38 caliber handgun from the pocket behind the passenger seat. That gun was admitted into evidence. The police testified about the pre-trial identification procedures and confirmed that Davis and Anthony both identified Petitioner as one of the robbers, but only Davis identified co-defendant Ferguson as one of the robbers. The police also testified about the various descriptions of the perpetrators given by the victims and witnesses following the robbery.

Petitioner's defense at trial was misidentification and alibi. Petitioner testified in his own defense. He said he began July 2, 2004 at his parents' house, went to a Dennis Cleveland's house with his girlfriend, and then went to the "Taste Fest" in the afternoon. Petitioner claimed that he did not see co-defendant Ferguson that day and denied committing the robbery. Petitioner also testified that he met up with Ferguson the following day after leaving a barbershop. They then saw James Mitchell and asked him to give them a ride. A few minutes after they got into the car, police stopped the car and arrested them.

Petitioner presented two alibi witnesses. Dennis Cleveland testified that Petitioner and a girl came to his house and woke him up on July 2, 2004. He spent the day with Petitioner. They went to the Taste Fest later that afternoon with Terry Hudson

4

and stayed late. Terrance Hudson testified that he left work sometime after 4:00 p.m. that day, went to Cleveland's house, and then went to the Taste Fest with Petitioner and Cleveland until dark.

Additionally, Clifton Jones testified for the defense. He said that he was working at a beauty salon near the flower shop on the day of the robbery, that he saw two men flee the flower shop, and that neither Petitioner nor co-defendant Ferguson were the men he saw running from the shop.

At the close of trial, the jury found Petitioner guilty of the charged offenses, but acquitted co-defendant Ferguson. The trial court subsequently sentenced Petitioner to the terms of imprisonment previously set forth.

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting several claims of error, including those raised in his habeas petition, in briefs filed by counsel and pro se. The Michigan Court of Appeals affirmed his convictions. *People v. Kittrell,* No. 260248, 2006 WL 2739340 (Mich. Ct. App. Sept. 26, 2006) (unpublished). The Michigan Supreme Court denied leave to appeal. *People v. Kittrell,* 477 Mich. 1033, 727 N.W.2d 612 (2007).

Petitioner thereafter filed the present federal habeas petition, raising the following claims:

I.  Where he and his co-defendant claimed misidentification and cited problems with eyewitness identifications, the trial court denied him the right to present a defense by limiting the jury's consideration of those problems to the case against the co-defendant.

II. Where an endorsed prosecution witness who could support a critical aspect of the defense theory did not appear to testify at trial due to illness, the trial court erred by refusing to either adjourn the trial or issue a missing witness instruction.

III.    He is entitled to a new trial where the trial court refused to hear his motion for evidentiary hearing and his right to be free from unreasonable search and seizure was violated.

IV.    The evidence presented at trial was insufficient to convict him of felon in possession of a firearm or felony firearm.

V.    The admission of Exhibit 1 (the gun recovered from the vehicle) was improper, highly prejudicial, and denied him a fair trial.

VI.    He is entitled to a new trial where the trial court denied him the right of self-representation and denied him the right to control the organization and content of his own defense.

VII.    He is entitled to a new trial where the trial court ignored his request for a handwriting expert to examine witnesses and attorney signatures.

VIII.    He is entitled to a new trial where the trial court refused to appoint substitute counsel and forced him to proceed with counsel who had a conflict of interest.

IX.    He is entitled to a new trial due to the ineffective assistance of trial counsel.

X.    He is entitled to a new trial where the trial court denied his motion for a Wade hearing, granted his co-defendant's motion for a Wade hearing, and his rights to confrontation and the assistance of counsel during the pretrial lineup were violated.

XI.    He is entitled to a new trial where the trial court refused to enforce a discovery order.

XII.    He is entitled to a new trial where the prosecution improperly vouched for the credibility of key witnesses.

Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit.

## II.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner

filed his habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must

have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Additionally, a federal habeas court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

Lastly, when a state court fails to consider an issue or does not specifically address whether the alleged error constitutes a denial of a habeas petitioner's federal constitutional rights, the deference due under 28 U.S.C. § 2254(d) does not apply, and habeas review of such a claim is *de novo*. *See Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), and citing

*Wiggins*, 539 U.S. at 534).

## III.  Discussion

## A.  Jury Instruction Claim

Petitioner first asserts that he is entitled to habeas relief because the trial court improperly instructed the jury on its consideration of witness testimony by limiting a portion of the instruction to the co-defendant.  Petitioner claims that this error violated his right to present a defense.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  State law instructional errors rarely form the basis for federal habeas corpus relief.  *Estelle*, 502 U.S. at 71-72.

The failure to give a defense instruction that is supported by the evidence does not automatically entitle a petitioner to habeas relief; the failure to instruct must have rendered the petitioner's trial fundamentally unfair.  *See Maes v. Thomas*, 46 F.3d 979, 984-85 (10th Cir. 1995); *Nickerson v. Lee*, 971 F.2d 1125, 1137 (4th Cir. 1995).  A failure to instruct does not deprive a petitioner of fundamental fairness where the instructions as a whole adequately present the defense theory to the jury.  *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995).  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Henderson*, 431 U.S. at 155: *see also Hardaway v. Withrow*, 305 F.3d 558, 565 (6th Cir. 2002).

9

Applying state and federal law principles, the Michigan Court of Appeals found that the trial court erred in limiting a portion of its instruction on witness identification to the co-defendant, but that reversal was not warranted because the instructions as a whole sufficiently informed the jury about the proper consideration of the evidence and the error was harmless given the overwhelming evidence of Petitioner's guilt presented at trial. The court explained in relevant part:

> The trial court gave the jury several instructions pertaining to witness identification of suspects, including instructions substantially identical to each of the five paragraphs of CJI2d 7.8. However, when the court reached the fourth paragraph of CJI2d 7.8, it explicitly referred only to codefendant. The identification instructions were read as follows:

>> Well, obviously one of the issues in this case is one of identification, identification of the Defendants as the perpetrators who committed the crime. The prosecutor must prove beyond a reasonable doubt that the crime was committed and the Defendants were the perpetrators.

>> In deciding how dependable an identification is, think about such things as how good a chance the witness had to see the offender at the time, how long the witness was watching, whether the witness had seen or known the offender before and how far away the witness was, whether the area was well lighted and the witness's state of mind at the time.

>> Also think about the circumstances at the time of the identification such as how much time had passed since the crime was committed, how sure the witness was about the identification and the witness's state of mind during the identification.

>> *For the defendant Ferguson* you may also consider any times that the witness failed-or a witness failed to identify the Defendant or made an identification or gave a description that did not agree with her identification of the Defendant during the trial.

>> You should examine the witness's identification testimony

carefully. You may consider whether other evidence
supports the identification because then it may be more
reliable. However, you may use the identification testimony
alone to convict either Defendant as long as you believe the
testimony and you find that it proves beyond a reasonable
doubt that the Defendant was the person who committed
the crime. [Emphasis added.]

When defendant objected to the court's reference to only codefendant in
the fourth paragraph, the court stated that it did not believe that it had
done so and added that the record would speak for itself.FN3

FN3. Unfortunately, this whole issue could have been effectively avoided
had the trial court simply checked the record before allowing the jury to
deliberate instead of relying on its memory in the face of a specific
objection.

Defendant argues that the court's inclusion of the fourth paragraph with
reference only to codefendant suggested that the jury should not consider
descriptions of defendant made by both witnesses on the day of the
robbery that were inconsistent with defendant's actual appearance and
age. He argues that this error requires reversal because it undermined
his primary defense of misidentification, which was based on his claim
that he merely looked more like the gunman than did the other men in the
lineup viewed by both witnesses.

There was indeed evidence of descriptions of defendant given by
witnesses that were somewhat inconsistent with the witnesses' trial
identifications of defendant as the perpetrator, i.e., inconsistency between
the pretrial, crime-scene descriptions and defendant's actual physical
characteristics and age. FN4 Therefore, the trial court erred in limiting
paragraph four of CJI2d 7.8 to codefendant. The error, however, did not
constitute a miscarriage of justice, and thus reversal is not appropriate.

FN4. We do note, however, that the two victims always identified
defendant as the perpetrator; there was never an inconsistency with
respect to identifying defendant as the robber before trial and then at trial.
The victims did not select anyone other than defendant during pretrial
identification procedures. The language at the end of the fourth
paragraph of CJI2d 7.8 that touches on misidentification would only have
pertained to codefendant based on the evidence; therefore, there was no
error in that respect. Additionally, when considering distinctions related to
facial hair, it must be remembered that police testimony regarding
defendant's appearance related to his appearance in the evening on the
day after the crime was committed.

The jury heard various instructions regarding witness credibility, ability to observe, length of observation, strength of memory, distractions, the reasonableness of testimony when considering other evidence, conflicting testimony, and other factors that necessarily touched on the evaluation of identification testimony. The jurors were informed that they were free to reject or accept a witness' testimony, in whole or in part. The untainted portions of CJI2d 7.8 clearly provided jurors with grounds to acquit defendant if they found that there had been unacceptable identifications of defendant. The court also read the following instruction:

> Now, the statements of [the victims] were admitted into evidence for the limited purpose of allowing you to examine those statements to evaluate the extent to which their trial testimony conflicted with those earlier statements and to allow you to evaluate the importance of that conflict if you find there was any.

> If you believe that a witness previously made a statement inconsistent with his or her testimony during the trial the only purpose for which that earlier statement can be considered by you is in deciding whether the witness testified truthfully in court-the earlier statement is not evidence-that what the witness said earlier is true and while I'm at it, remember I said you can only base your verdict on the evidence.

It is unreasonable to conclude that the jury was under the impression that it could not consider discrepancies in description relative to defendant after having hearing all of the instructions and viewing them as a whole. The jury had just sat through an entire trial in which there was a parade of evidence regarding the identifications and descriptions of defendant, which the jury was not told to disregard, followed by closing arguments, accepted without relevant objections, related to any identification discrepancies. Needless to say, the jury was aware, on the basis of the instructions, that the prosecution had to prove beyond a reasonable doubt that defendant committed the crime and that any evidence indicating that it may not have been defendant would bear against a finding of guilt. The misstatement by the trial court was brief and fleeting. And the fact that codefendant was acquitted has little import, given that one of the victims failed to identify codefendant before and at trial, while defendant was positively identified by the two victims before and at trial without fail.

That being said, we fully recognize that it is presumed that the jury followed the incorrect instruction, *People v. Hess*, 214 Mich. App. 33, 37,

543 N.W.2d 332 (1995), but considering the overwhelming evidence of defendant's guilt, we are not prepared to conclude that the instructional error resulted in a miscarriage of justice nor that it is more probable than not that the error was outcome determinative. The evidence of guilt included the positive identifications of defendant made by the two victims before and at trial, both of whom saw defendant up close for some time directly before and during the robbery. Additionally, defendant was subsequently found in a vehicle that was indisputably identified by license plate number and description as the vehicle in which the perpetrators fled. Moreover, police discovered a weapon in the vehicle, which weapon was located in a pocket directly behind the passenger seat in which defendant was sitting, and which weapon was comparable to the weapon identified by the victim who had the gun pointed at her head. Furthermore, the discrepancies between the descriptions and defendant's actual appearance and age are not that significant. Reversal is simply unwarranted.

*Kittrell*, 2006 WL 2739340 at *3-5.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The record reveals that the trial court properly instructed the jury on the elements of the charged offenses, the burden of proof, the presumption of innocence, witness credibility in general, and the proper evaluation of the evidence. Such instructions required the jury to conclude that Petitioner committed the crime beyond a reasonable doubt in order to find him guilty of the charged offenses. While the challenged instruction would have been appropriate under state law and in keeping with the defense theory, it was not constitutionally required. The jury was well aware of Petitioner's defense to the crime, as well as the necessary elements of the charged offenses. The jury instructions as a whole adequately conveyed such matters to the jury. The jury could not have accepted Petitioner's defense without acquitting him under the instructions given by the trial court, and this Court must presume that the jury followed the trial court's given instructions. *See*

*Richardson v. Marsh*, 481 U.S. 200, 206 (1987); *see also Shannon v. United States*, 512 U.S. 573, 585 (1994); *United States v. Olano*, 507 U.S. 725, 740 (1993).

Where, as here, the instructions as a whole adequately convey the defense theory of the case to the jury, a petitioner is not entitled to habeas relief based on the trial court's failure to give a specific instruction. *See, e.g., Rodriguez v. Young*, 906 F.2d 1153, 1166 (7th Cir. 1990) (habeas relief not warranted where "the instructions finally given to the jury adequately addressed the [petitioner's] theory in a general way, even if not as specifically as [he] would have liked," and the instructions, "considered together, and along with counsel's argument and cross examination ... should have reasonably conveyed to the jury [the petitioner's] theory of the case."). The trial court's state law instructional error did not render Petitioner's trial fundamentally unfair.

Moreover, even if a constitutional violation occurred, Petitioner is not entitled to relief from this Court. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993); *see also Fry v. Pliler,* 551 U.S. 112, 117-18 (2007) (confirming that *Brecht* standard applies in "virtually all" habeas cases); *O'Neal v. McAninch,* 513 U.S. 432, 445 (1995) (habeas court should grant petition only if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon the jury's verdict); *Ruelas v. Wolfenbarger*, 580 F.3d 403 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in this circuit). In this case, the victims' identifications provided significant evidence of Petitioner's guilt, particularly when coupled with the fact that he was arrested the day after the robbery while riding in the getaway car with

a gun similar to the one used in the robbery. Petitioner has not shown that the instructional error had a substantial and injurious effect or influence upon the jury's verdict. The Court is confident that any error in instructing the jury was harmless beyond a reasonable doubt. Habeas relief is not warranted.

## B. Missing Witness Claim

Petitioner next asserts that he is entitled to habeas relief because Detroit Police Sergeant Matthew Gnatek, an endorsed prosecution witness, did not appear for trial due to illness and the trial court refused to either adjourn the trial or issue a missing witness instruction. Sergeant Gnatek was one of the officers involved in the traffic stop. According to Petitioner, Gnatek would have testified that he saw Petitioner get into the car shortly before it was stopped by the police.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1973). For this reason, the prosecution in a criminal trial must make a good faith effort to produce relevant witnesses at trial. *See Barber v. Page*, 390 U.S. 719, 724-25 (1968). The standard for evaluating whether the prosecution has made a good faith effort to produce a witness is one of reasonableness. *Ohio v. Roberts*, 448 U.S. 56, 74 (1990), *overruled on other grounds, Crawford v. Washington*, 541 U.S. 36 (2004). The failure to produce a relevant witness only serves as a basis for habeas corpus relief if, under federal constitutional law, the petitioner is denied a fundamentally fair trial. *See Moreno v. Withrow*, 61 F.3d 904, 1995 WL 428407, *1-2 (6th Cir. 1995) (failure to call res gestae

witness did not render trial fundamentally unfair and did not constitute prosecutorial misconduct).

The Michigan Court of Appeals denied relief on this claim, stating:

> We find that the witness was properly excused and that there was no lack of due diligence on the part of the prosecutor; therefore, there was no error in failing to give the jury a missing witness instruction. *People v. Perez*, 469 Mich. 415, 420, 670 N.W.2d 655 (2003); *People v. Eccles*, 260 Mich. App. 379, 388, 677 N.W.2d 76 (2004). With respect to the requested adjournment, we hold that the trial court did not abuse its discretion in denying the request as the testimony from the missing witness, as proffered and described by defendant, was not material. MCR 2.503(C)(2); *People v. Jackson*, 467 Mich. 272, 276-277, 650 N.W.2d 665 (2002); *People v. Grace*, 258 Mich. App. 274, 276, 671 N.W.2d 554 (2003). Assuming that the officer would have testified as contended by defendant, the testimony would have been minimally relevant and would in all likelihood have made no difference as the testimony would still have placed defendant in the vehicle that was seen leaving the crime scene. Reversal is unwarranted.

*Kittrell*, 2006 WL 2739340 at *5.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The trial court acted reasonably in excusing Sergeant Gnatek based upon his two-week-long illness and absence from work. It was also reasonable for the trial court not to adjourn the trial or provide a missing witness instruction.

Moreover, even if the prosecution erred in failing to produce the witness, Petitioner has not shown that such failure rendered his trial fundamentally unfair. Gnatek's purported testimony about when he saw Petitioner get into the car was marginally relevant and was not exculpatory given that such events occurred the day after the robbery. Petitioner has not shown that he was prejudiced by Gnatek's failure to testify at trial. Petitioner has thus failed to establish that Gnatek's absence rendered

16

his trial fundamentally unfair.  Habeas relief is not warranted on this claim.

### C.  Fourth Amendment Claim

Petitioner next asserts that he is entitled to habeas relief because the police lacked probable to stop the vehicle in which he was a passenger and arrest him, and the trial court denied his request for an evidentiary hearing on the matter.  Federal courts will not address a Fourth Amendment claim upon habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes.  *Stone v. Powell*, 428 U.S. 465, 494-95 (1976).  A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of illegal arrest in a habeas action.  First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim.  Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism."  *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)).

"Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim."  *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005).  This procedural mechanism is a motion to suppress, ordinarily filed before trial.  *See People v. Ferguson*, 135 N.W.2d 357, 358-59 (Mich. 1965) (describing the availability of a pre-trial motion to suppress); *see also People v. Harris*, 291 N.W.2d 97, 99 (Mich. App. 1980) (analyzing the legality of a warrantless search, seizure, and arrest even though raised for the first time on appeal).  Consequently, Petitioner is entitled to relief on this issue only if he establishes that he

was prevented from litigating the Fourth Amendment issue by a failure of Michigan's procedural mechanism. Petitioner has not done so.

The record reveals that Petitioner raised the illegal stop/arrest issue before the trial court and on appeal. The trial court concluded that Petitioner was not entitled to relief, the Michigan Court of Appeals indicated that the claim lacked merit in affirming his convictions, and the Michigan Supreme Court denied leave to appeal.

Given this record, it is clear that the Michigan courts were cognizant of Petitioner's Fourth Amendment issue and that he received all the process he was due. While Petitioner challenges the state courts' decisions and claims that he should have been given an evidentiary hearing, he has not shown that the procedures were flawed such that he was unable to properly litigate the issues. Petitioner had a full and fair opportunity to do so. Accordingly, his illegal arrest claim is not cognizable on federal habeas review pursuant to *Stone v. Powell*. Habeas relief is not warranted.

### D. Insufficient Evidence Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his felon in possession and felony firearm convictions.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original); *see also DeLisle v. Rivers*, 161 F.3d 370, 389 (6th Cir. 1998). The court must view this standard

18

through the framework of 28 U.S.C. § 2254(d).  *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  The Jackson standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Jackson*, 443 U.S. at 324 n. 16.  "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim."  *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, the elements of felon in possession of a firearm are:  (1) that the defendant was convicted of a felony, (2) that the defendant possessed a firearm, and (3) that at the time of possession less than three or five years, depending on the underlying felony, has passed since the defendant had completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines.  *See* Mich. Comp. Laws § 750.224f.  The elements of felony firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony.  *See* Mich. Comp. Laws § 750.227b; *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863 (2003) (citing *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999)). Circumstantial evidence and reasonable inferences from such evidence can constitute satisfactory proof of the elements of the crime.  *See People v. Carines*, 460 Mich. 750, 757, 597 N.W.2d 130 (1999).  A prosecutor need not admit a firearm into evidence to prove that the defendant possessed a firearm during a crime.  *See People v. Cedric Hayden*, 132 Mich. App. 273, 296, 348 N.W.2d 672 (1984).

Applying the *Jackson* standard, the Michigan Court of Appeals denied relief on this claim, stating in relevant part:

Here, the robbery victim attested that defendant put a "grayish black"

19

handgun to her head; she could see the barrel of the gun. This evidence, when viewed in a light most favorable to the prosecution, was sufficient to allow a rational trier of fact to conclude that defendant possessed a firearm as defined by law. *See People v. Perry*, 172 Mich.App. 609, 623, 432 N.W.2d 377 (1988). Moreover, as will be discussed in greater detail below, the handgun discovered in the car in which defendant was riding was admitted into evidence, and it was sufficiently linked to the robbery for the jury to infer that it was used in the crime. Defendant does not argue that the firearm admitted into evidence was not a firearm meeting the definitional requirements set forth in MCL 8.3t. Reversal is unwarranted.

*Kittrell*, 2006 WL 2739340 at *1.

This decision is neither contrary to *Jackson* nor an unreasonable application of federal law or the facts. The trial record, particularly the victim's testimony if believed, establishes that Petitioner, an admitted prior felon who was not authorized to carry weapon, was armed with a gun and committed an armed robbery. Petitioner challenges the credibility of the testimony and the inferences the jury drew from the evidence at trial. However, it is well-settled that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin*, 280 F.3d at 618.

Additionally, to the extent that Petitioner challenges the Michigan Court of Appeals' construction or application of state law, he is not entitled to habeas relief. It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas

review." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see also Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (state courts are the final arbiters of state law); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). The Michigan Court of Appeals' decision that a rational trier of fact could find the essential elements of felon in possession of a firearm and felony firearm beyond a reasonable doubt was reasonable. Habeas relief is not warranted.

### E. Admission of Gun – Evidentiary Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting the gun recovered during the traffic stop. Petitioner claims that the gun was inadmissible as irrelevant, highly prejudicial, and inflammatory because it was not directly identified as the one used in the robbery, he neither owned nor was driving the car in which it was found, and the prosecution did not charge him with possessing the weapon in the vehicle.

Trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals denied relief on this claim, explaining:

The gun was discovered one day after the crime in a car fitting the
description and license plate number of the car involved in the robbery.
Defendant was sitting in the front passenger seat of the car, and the gun

21

was found in a pocket behind this seat. The gun recovered from the car was a loaded .32 caliber blue steel revolver. When the victim was shown the gun at trial, she attested that she "believ[ed]" that the gun recovered was the one used in the crime; at a minimum, she agreed that it looked similar to the gun that was used. On the day of the robbery, the victim described the gun to police as "greyish black," and she could see its barrel. Her statement to police on the day of the crime also noted that the gun was a .38 caliber revolver. At trial, however, she testified that she did not specifically describe the gun's caliber to police because she was not familiar enough with guns to know the caliber. The officer taking her statement testified that either she told him it was a .38 caliber gun or she merely told him it was a small caliber gun and he "put .38 in there." He also testified that .32 and .38 caliber guns are similar. They are small handguns with cylinders, and most people cannot tell the difference between the two because they have virtually identical appearances.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Any tendency to prove a fact in issue is sufficient. *People v. Mills*, 450 Mich. 61, 68, 537 N.W.2d 909 (1995), *order mod* 450 Mich. 1212, 539 N.W.2d 504 (1995). Relevant evidence is generally admissible, but it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." MRE 402; MRE 403; *see also People v. Sabin (After Remand)*, 463 Mich. 43, 56-58, 614 N.W.2d 888 (2000).

Here, the gun was linked to the robbery based on its appearance and its presence in the car on the day after the crime. It was certainly relevant to whether the gunman-who was seen getting into the car just after the robbery-possessed a firearm during the robbery. The fact that a gun similar to the one described by the victim was found in the car associated with the robbery, on the day after the crime, at a time when three men were in the car, including defendant who was positively identified by the two victims as one of the perpetrators, was highly probative of whether defendant was involved in the robbery. Therefore, the gun was relevant, and the probative value of the firearm was not substantially outweighed by the danger of unfair prejudice; there was no unfair prejudice. The fact that the prosecutor chose not to charge defendant with unlawfully possessing the gun in the vehicle has no bearing on our inquiry.FN2 There are many reasons a prosecutor may have for not charging a defendant with a particular offense, and defendant does not otherwise explain how the circumstances suggested that defendant was not involved with the weapon. The trial court did not err in admitting the gun.

FN2. Apparently, defendant is suggesting that he could have been charged with carrying a weapon in a vehicle in contravention of MCL 750.227, the concealed weapons statute.

*Kittrell*, 2006 WL 2739340 at *2.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  The gun was relevant and admissible under state law because it matched the description of the gun used in the armed robbery, it was recovered from the getaway car the day after the robbery, and it was linked to Petitioner due to the victims' identification of him as one of the robbers and his presence in the getaway car.  Petitioner has failed to establish that the trial court committed an evidentiary error under state law or that the admission of the gun rendered his trial fundamentally unfair.  Habeas relief is not warranted on this claim.

### F.  Self-Representation Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court refused to allow him to represent himself and denied him the right to control and present his own defense.  The Michigan Court of Appeals concluded that this claim lacked merit, but did not explain its decision.  *Kittrell*, 2006 WL 2739340 at *6.  The Court shall thus review this claim *de novo*.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the assistance of counsel, *see Powell v. Alabama*, 287 U.S. 45, 53 (1932); and gives an indigent criminal defendant the right to the assistance of court-appointed counsel.  *See Gideon v. Wainwright*, 372 U.S. 335, 343 (1963).  The Sixth Amendment also grants a criminal defendant the right to self-representation, if he voluntarily and intelligently elects to do so.  *Martinez v. Court of Appeal of California*,

528 U.S. 152, 153 (2000); *Faretta v. California*, 422 U.S. 806, 819 (1975). A waiver of the right to counsel must be voluntary, knowing and intelligent. *Iowa v. Tovar*, 541 U.S. 77, 88 (2004); *Faretta*, 422 U.S. at 835; *Jones v. Jamrog*, 414 F.3d 585, 593 (6th Cir. 2005). "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *see also Tovar*, 541 U.S. at 92. Additionally, a criminal defendant who seeks to proceed *pro se* must generally be aware of the risks of self-representation so that "he knows what he is doing and his choice is made with eyes open." *See Faretta*, 422 U.S. at 835. The right to counsel and the right to defend oneself are viewed as correlative rights in that waiver of one necessarily constitutes an assertion of the other. *See United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970); *see also United States v. Cromer*, 389 F.3d 662, 680 (6th Cir. 2005).

In this case, the record indicates that the trial court initially agreed that Petitioner could represent himself with the assistance of standby counsel. The trial court subsequently changed its mind, however, and determined that Petitioner's request for self-representation was not unequivocal and that allowing Petitioner to proceed *pro se* would be disruptive to the proceedings. This decision was reasonable. The charges in the case were serious and Petitioner was not highly-educated nor trained in the law. He also exhibited some hostility and disruptive behavior during the pre-trial process. Given such circumstances, the Court finds that the trial court acted within its discretion in requiring Petitioner to proceed with the assistance of counsel.

24

Petitioner relatedly asserts that he was denied his right to control and present a defense because the trial court failed to consider his *pro per* motions and because trial counsel failed to do what he wanted. The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. State*, 388 U.S. 14, 19 (1967); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986). Petitioner, however, has not shown that he was denied his rights. The record indicates that the trial court read the *pro se* motions and found them to be incomprehensible. The record further indicates that the court and/or counsel provided Petitioner with discovery materials, that counsel consulted with Petitioner, that counsel filed motions and advocated on Petitioner's behalf throughout the pre-trial and trial proceedings, and that counsel presented the defenses of both misidentification and alibi at trial. The fact that counsel did not take other legal actions requested by Petitioner does not mean that Petitioner was denied his constitutional rights. It was counsel's job to make legal decisions. To the extent that Petitioner refused to cooperate with counsel, he can blame no one but himself. Petitioner has failed to establish that he was unable to participate in his defense or denied the right to present a defense. Habeas relief is not warranted on this claim.

### G. Expert Witness Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court denied his request for appointment of a handwriting expert to examine witnesses and challenge attorney signatures. The Michigan Court of Appeals concluded that this claim lacked merit, but did not explain its decision. *Kittrell*, 2006 WL 2739340 at *6. The Court shall thus review this claim *de novo*.

Having done so, the Court finds that Petitioner is not entitled to relief. Petitioner has not identified a clearly established federal law entitling him to a handwriting expert. The only case arguably on point is *Ake v. Oklahoma,* 470 U.S. 77 (1985). The United States Supreme Court's holding in *Ake*, however, was limited:

> We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.

*Id.* at 83. The Supreme Court did not discuss a defendant's entitlement to a court-appointed expert outside the context of an insanity defense. Subsequent to *Ake*, the Supreme Court has explicitly declined to answer this question. *See Caldwell v. Mississippi,* 472 U.S. 320, 323 n.1 (1985).

In light of the language of *Ake* and the Supreme Court's reservation in *Caldwell*, there is disagreement over whether *Ake* requires the provision of expert services beyond psychiatric services necessary to present an insanity defense. *Cf. Terry v. Rees,* 985 F.2d 283, 284 (6th Cir. 1993) (petitioner denied opportunity to present an effective defense by failure to appoint independent pathologist); *McKenzie v. Jones,* 100 Fed. Appx. 362, 364-65 (6th Cir. 2004) (petitioner has no constitutional right to the appointment of an expert of his personal liking or to receive funds to hire his own); *Conklin v. Schofield,* 366 F.3d 1191, 1206 (11th Cir. 2004) (noting that the Supreme Court has not extended *Ake* to non-psychiatric experts); *Brewer v. Cason,* No. 1:05-CV-118, 2006 WL 3103212, *12-13 (W.D. Mich. Oct. 31, 2006) (same); *Fitzpatrick v. Renico,* No. 05-CV-70107, 2006 WL 2069514, *10-12 (E.D. Mich. July 26, 2006)

(citing *Ake* and stating that the Supreme Court "has never extended the state's obligation to provide expert assistance beyond psychiatric examination").

Under the AEDPA, however, the question is not whether this Court, or the United States Court of Appeals for the Sixth Circuit, would extend *Ake* to require the provision of non-psychiatric experts. Rather, the question is whether *Ake* clearly establishes Petitioner's right to the appointment of a handwriting expert. In pre-AEDPA cases, courts have held that extending *Ake* to non-psychiatric experts would amount to a "new rule" of constitutional law which could not be applied on collateral review under the Supreme Court's decision in *Teague v. Lane,* 489 U.S. 288 (1989). *See Gray v. Thompson,* 58 F.3d 59, 66 (4th Cir. 1995), *vacated on other grounds*, 518 U.S. 152 (1996); *Jackson v. Ylst,* 921 F.2d 882, 885-86 (9th Cir. 1990). The *Teague* rule is "the functional equivalent" of the clearly established law requirement of § 2254(d)(1), and, thus, a rule which fails to satisfy *Teague* also fails to satisfy § 2254(d)(1). *See Williams,* 529 U.S. at 380 (opinion of Stevens, J.); *id.* at 412 (opinion of O'Connor, J., for the Court); *see generally Williams v. Cain,* 229 F.3d 468, 474-75 (5th Cir. 2000) (discussing relationship between *Teague* and § 2254(d)(1)). Thus, Petitioner's asserted right to the appointment of a handwriting expert (*i.e,* a non-psychiatric expert) was not clearly established law under § 2254(d)(1) at the time of his convictions. *See Weeks v. Angelone,* 4 F. Supp. 2d 497, 521-22 (E.D. Va. 1998), *aff'd*, 176 F.3d 249, 264-65 (4th Cir. 1999), *aff'd on other grounds*, 528 U.S. 225 (2000). Petitioner is therefore not entitled to relief on this claim.

Furthermore, Petitioner has not established that the trial court's refusal to appoint a handwriting expert deprived him of a substantial defense or otherwise

rendered his criminal proceedings fundamentally unfair. While the right of an accused to present a defense has long been recognized as "a fundamental element of due process," *Washington v. State*, 388 U.S. 14, 19 (1967), "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). Petitioner has not shown that the appointment of a handwriting expert would have aided his defense. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings). Petitioner has failed to establish that he was prejudiced by the trial court's refusal to appoint a handwriting expert. Habeas relief is not warranted on this claim.

### H. Substitute Counsel Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court denied his request for substitute counsel and forced him to proceed with counsel who had a conflict of interest. The Michigan Court of Appeals concluded that this claim lacked merit, but did not explain its decision. *Kittrell*, 2006 WL 2739340 at *6. The Court shall therefore review this claim *de novo*.

28

It is well-established that the right to counsel of one's choice is not absolute, *see Wheat v. United States*, 486 U.S. 153, 159 (1988), and that an indigent defendant does not have an absolute right to choose appointed counsel. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). A defendant who is dissatisfied with appointed counsel must show "good cause" to warrant the substitution of counsel. *See United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). Good cause includes "a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with [the] attorney." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985). The decision regarding whether to appoint new counsel at a defendant's request is committed to the sound discretion of the trial court. *See United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004).

The Sixth Circuit has cited three factors to consider when evaluating a trial court's denial of a request for substitute counsel: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the attorney and the defendant was so great that it resulted in a total lack of communication preventing an adequate defense. *See Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (citing *Iles*). These factors are balanced with the public's interest in the prompt and efficient administration of justice. *See Iles*, 806 F.2d at 1131, n. 8; *see also United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

In this case, the trial court did not abuse its discretion nor violate Petitioner's constitutional rights in denying his request for substitute counsel. Petitioner never expressed any dissatisfaction with defense counsel until a few days before trial. A request for substitute counsel on the day of trial or a few days before trial is untimely.

29

*See Trujillo*, 376 F.3d at 606-07; *United States v. Wilhite*, 108 F. App'x 367, 369 (6th Cir. 2004). There is no indication in the record that counsel was ill-prepared for trial. Petitioner's allegation that trial counsel made sexual advances toward him was unsubstantiated and discredited by the trial court. While counsel moved to withdraw at Petitioner's request, he also indicated that he believed Petitioner was trying to delay or create an issue for appeal. Neither counsel nor Petitioner established that their differences would prevent counsel from mounting a defense. In fact, trial counsel presented reasonable and consistent defenses of misidentification and alibi. Lastly, the witnesses would have been inconvenienced and the judicial process impeded by further delays in the proceedings. Petitioner has failed to establish that the trial court erred in denying his request for substitute counsel. Habeas relief is not warranted.

## I. Ineffective Assistance of Trial Counsel Claim

Petitioner relatedly asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to seek suppression of the victims' identifications, for failing to request identification and handwriting experts, for failing to investigate Sergeant Gnatek's statements at a parole hearing, for failing to obtain favorable evidence in discovery, for failing to object to witness Keith Sanford's testimony or cross-examine him, for failing to object to the admission of the gun, for failing to challenge the probable cause for his arrest, and for failing to inform the court that Petitioner had fired him at start of the preliminary exam. The Michigan Court of Appeals concluded that this claim lacked merit, but did not explain its decision. *Kittrell*, 2006 WL 2739340 at *6. Accordingly, the Court shall review this claim *de novo*.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme

30

Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Id.* at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

Having reviewed the record, Petitioner has failed to establish that trial counsel erred and/or the he was prejudiced by counsel's conduct. As to the failure to seek

suppression of the victims' identifications, the record indicates that counsel considered the matter, thought that any such motion would be frivolous, and decided to merely "piggy back" on co-defendant Ferguson's motion. Counsel also vigorously challenged the identifications during trial. Petitioner has not shown that counsel's strategic conduct was unreasonable or deficient. Moreover, Petitioner cannot establish that he was prejudiced by counsel's conduct in this regard given that the trial court denied co-defendant Ferguson's motion to suppress the identifications. Counsel cannot be deemed ineffective for failing to make a futile motion or objection. *See McQueen*, 99 F.3d at 1316.

As to trial counsel's failure to request identification or handwriting experts, Petitioner's allegations are speculative and conclusory. Although Petitioner asserts that eyewitness testimony is inherently unreliable and that attorney signatures on the lineup sheet were forged, Petitioner fails to offer any expert testimony in support of his claim or to otherwise demonstrate that expert testimony would have made a difference at trial. As noted, conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman*, 178 F.3d at 771; *see also Malcum v. Burt*, 276 F. Supp. 2d 664, 679 (E.D. Mich. 2003) (to present a viable ineffective assistance of counsel claim based upon the failure to call a witness, a petitioner must make an affirmative showing as to the witness's identity and availability and the substance of his or her testimony, and must show that the testimony would have likely affected the outcome).

Moreover, the record shows that counsel cross-examined the victims about their descriptions of the robbers and their identifications of Petitioner (and co-defendant

32

Ferguson), questioned police officers about those same issues, presented Petitioner's own testimony, called alibi witnesses, and offered a witness who testified that Petitioner and Ferguson were not the men he saw fleeing the scene. Such strategy was reasonable. Petitioner has failed to establish that counsel erred or that he was prejudiced by counsel's conduct in not seeking identification or handwriting experts. *See, e.g., Ferensic v. Birkett*, 501 F.3d 469, 483-84 (6th Cir. 2007) (citing *Dorch v. Smith*, 105 F. App'x 650, 653 (6th Cir. 2004), and denying relief on similar claim).

As to counsel's alleged failure to investigate Sergeant Gnatek's statements at a parole hearing, this claim is belied by the record. The record shows that counsel was aware of Sergeant Gnatek and made an effort to investigate his statements and secure his appearance at trial. Gnatek was unavailable to testify due to illness, and counsel requested a missing witness instruction. Petitioner has not shown that counsel erred or that he was prejudiced by counsel's conduct.

As to trial counsel's alleged failure to obtain favorable discovery evidence, the record indicates that counsel obtained discovery materials prior to trial and was able to sufficiently cross-examine witnesses and present a defense. The record further reveals that counsel argued that the police failed to have the gun tested for fingerprints and failed to produce the police video of the vehicle stop. Such conduct was strategic and a reasonable way to challenge the quality of the police investigation. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Petitioner has failed to

establish that counsel was ineffective.

As to counsel's failure to object to witness Keith Sanford's testimony or cross-examine him, Petitioner has failed to establish that counsel erred or that he was prejudiced. First, Sanford's observations of the men fleeing the scene, as well as his description of the car and license plate, were highly relevant and admissible. Petitioner has not provided a basis for the suppression of such testimony. As noted, conclusory allegations are insufficient to justify habeas relief. Second, counsel may have reasonably decided not to further question Sanford because his testimony was brief, straightforward, and uncomplicated. Additionally, Sanford favorably testified that he could not identify the perpetrators. Petitioner has not shown what information counsel would have elicited which would have further benefitted the defense. He has thus failed to establish that trial counsel erred or that he was prejudiced by counsel's conduct in handling this witness.

As to counsel's failure to object to the admission of the gun, Petitioner has not shown that counsel erred or that he was prejudiced by counsel's conduct. As discussed *supra*, the gun was admissible under state law. Thus, any objection by counsel would have been denied. Defense counsel cannot be deemed ineffective for failing to make a futile motion or objection. *See McQueen*, 99 F.3d at 1316.

As to counsel's failure to challenge the legality of his arrest, Petitioner has not established a constitutional violation. It is well-established that the Fourth Amendment requires probable cause for an arrest. *See Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003). This inquiry turns on whether the facts and circumstances within the officer's knowledge "are sufficient to warrant a prudent person, or one of

reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citing cases); *see also Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001). The officer need not "possess evidence sufficient to establish a prima facie case at trial, much less evidence beyond a reasonable doubt." *United States v. Strickland*, 144 F.3d 412, 413 (6th Cir. 1998).

In this case, the record indicates that police had a description and license plate for the car seen leaving the armed robbery, along with descriptions of the perpetrators. The police observed the car the next day and stopped it. They discovered Petitioner and the other men in the vehicle, along with a gun. The men loosely matched the descriptions of the perpetrators. Such information was sufficient to establish probable cause for the stop and arrest. Petitioner has thus failed to establish that counsel erred or that he was prejudiced by counsel's conduct in this regard. As noted, counsel cannot be deemed ineffective for failing to make a futile motion or objection. *See McQueen*, 99 F.3d at 1316.

Lastly, as to counsel's failure to inform the court that Petitioner had fired him at start of the preliminary exam, there is no evidence in the record to support this claim. The record indicates that the trial court allowed Petitioner to represent himself, with trial counsel standing by to assist him, at the preliminary examination. Petitioner was not entitled to "fire" appointed counsel. Moreover, Petitioner indicated that he might want counsel (or a lawyer) to represent him at trial. Petitioner has not shown that counsel erred, or that he was prejudiced by counsel's conduct in this regard. Petitioner has thus failed to establish that trial counsel was ineffective under *Strickland*. Habeas relief

is not warranted on this claim.

## J.  Wade Hearing Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in denying his motion for a *Wade* hearing, while granting his co-defendant's motion for the same, such that he was denied his rights to confrontation and the assistance of counsel at the pre-trial lineup.  The Michigan Court of Appeals concluded that this claim lacked merit, but did not explain its decision.  *Kittrell*, 2006 WL 2739340 at *6.  The Court shall review this claim *de novo*.

The Court agrees that this claim lacks merit.  The record indicates that Petitioner's trial counsel did not request a *Wade* hearing because he thought that it would be "totally frivolous."  Moreover, contrary to Petitioner's claim, the record indicates that counsel was present at the line-up and that no objections were made. Petitioner has failed to present facts which establish a violation of his constitutional rights, nor has he shown that he was prejudiced by the failure to conduct a *Wade* hearing – particularly since the trial court conducted such a hearing at co-defendant Ferguson's request and refused to suppress the identifications.  Petitioner's own conclusory allegations of improprieties or prejudice do not justify relief from this Court. *See, e.g., Workman*, 160 F.3d at 287.  Habeas relief is not warranted.

## K.  Discovery Order Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court failed to enforce a discovery order.  He claims that he did not receive the following materials before trial: 1) police car video of his arrest, 2) witness statements taken by police at the scene, 3) his own statement to arresting officers, 4) firearm fingerprints,

and 5) everything known to the prosecutor. The Michigan Court of Appeals concluded that this claim lacked merit, but did not explain its decision. *Kittrell*, 2006 WL 2739340 at *6. The Court shall review this claim *de novo*.

To the extent that Petitioner alleges a violation of the state trial court's discovery order, he is not entitled to federal habeas relief. A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Trial court errors in the application of state procedure or evidentiary law are not cognizable as grounds for federal habeas relief. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Thus, any claim by Petitioner that the prosecution violated the trial court's discovery order does not provide a basis for federal habeas relief and must be denied. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002).

Moreover, Petitioner has failed to establish a violation of his federal constitutional rights. It is well-settled that there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). The Supreme Court has held that the prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In other words, to find a Brady violation, not only must the evidence be suppressed, but the suppressed evidence must be material and favorable to the accused. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985).

Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 432-36 (1995). Material evidence is that which is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce." *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir. 1993). The duty to disclose favorable evidence includes the duty to disclose impeachment evidence. *Bagley, supra; Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

The *Brady* rule only applies to "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976); *see also Mullins v. United States*, 22 F.3d 1365, 1370-71 (6th Cir. 1994). Moreover, a Brady violation does not occur if previously undisclosed evidence is disclosed during trial unless the defendant is prejudiced by its prior non-disclosure. *See United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). Thus, in order to establish a *Brady* violation, a petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of the petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *see also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The petitioner bears the burden of establishing a *Brady* violation. *Carter*, 218 F.3d at 601.

Petitioner has not met his burden. First, the witness statements were not suppressed given that they were disclosed to the defense at the time of trial and

Petitioner has not shown that any delay in disclosure prejudiced his defense. Second, Petitioner was aware of his own statement to police and has not shown that such information was in the sole possession of the prosecution. Moreover, while Petitioner's statement may have been consistent with his trial testimony, it did not have further exculpatory value. Third, Petitioner has not shown that there is a reasonable probability that, had the foregoing evidence been previously disclosed to the defense, the result of the proceeding would have been different. Fourth, as to any police video or fingerprint evidence, Petitioner has not shown that such evidence existed or that it would have benefitted defense. Lastly, there is no indication in the record that the prosecution intentionally withheld materials. Given such circumstances, the Court cannot conclude that the prosecutor violated Petitioner's constitutional rights or deprived him of a fundamentally fair trial. Habeas relief is not warranted on this claim.

### L.  Prosecutorial Misconduct Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by vouching for the credibility of prosecution witnesses, making arguments not supported by the evidence, and criticizing defense witnesses. The Michigan Court of Appeals concluded that this claim lacked merit, but did not explain its decision. *Kittrell*, 2006 WL 2739340 at *6. Accordingly, the Court reviews this claim *de novo*.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial

39

with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id.* at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.; see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

Petitioner first asserts that the prosecution vouched for the victims' credibility by using the phrase "we know" in discussing their identifications of Petitioner and by saying they provided truthful testimony. It is well-settled that it is improper for a prosecutor to express his or her own personal opinions as to a witness's credibility. *See United States v. Young*, 470 U.S. 1, 9-10 (1985); *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002). Such statements are improper because they can

40

convey the impression that the prosecutor has evidence not presented to the jury which supports the charges against the defendant thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own. *See United States v. White*, 58 F. App'x 610, 617-18 (6th Cir. 2003) (citing cases).

In this case, the prosecutor did not improperly vouch for witnesses. A review of the record reveals that the prosecutor based his arguments on the testimony and argued from the evidence that the prosecution witnesses were credible and should be believed. A prosecutor has leeway to argue the evidence and reasonable inferences therefrom. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). Moreover, a prosecutor may argue from the facts that a witness is (or is not) worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000). The prosecutor did not vouch for the witnesses, imply that he had knowledge of facts which were not presented to the jury, nor express a personal belief in guilt. Petitioner has failed to establish that the prosecutor's argument was improper.

Petitioner also asserts that the prosecutor argued facts not in evidence by stating that James Mitchell was likely the person who drove the car from the robbery. It is well-settled that a prosecutor may not misstate the evidence or assume the existence of prejudicial facts not in evidence. *See Donnelly*, 416 U.S. at 646; *Darden v. Wainwright*, 477 U.S. 168, 182 (1986); *Hodge v. Hurley*, 426 F.3d 368, 380-81 (6th Cir. 2005); *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001). In this case, however, the prosecution's argument was based upon a reasonable inference

from the evidence that the getaway car matched the description and licence plate of Mitchell's car and the evidence that Petitioner and Ferguson were with Mitchell in his car the next day. As noted, a prosecutor may argue reasonable inferences from the evidence. *See Byrd*, 209 F.3d at 535. The prosecutor's argument was appropriate. The fact that Petitioner's testimony or other evidence may have supported a counter-argument is inconsequential.

Petitioner further asserts that the prosecutor improperly denigrated defense witnesses by stating that they were not believable. It is clearly inappropriate for a prosecutor to make personal attacks on a defendant or defense counsel, *see United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996), or to express a personal opinion as to a defendant's guilt or a witness's credibility, *Young*, 470 U.S. at 9-10; *Modena*, 302 F.3d at 634. As noted, however, a prosecutor has leeway to argue reasonable inferences from the evidence, *see Byrd*, 209 F.3d at 535, and to argue from the facts that a witness, including a testifying defendant, is or is not worthy of belief. *See Portuondo*, 529 U.S. at 69. The prosecutor did just that. He based his credibility arguments on the evidence presented at trial. Such arguments were appropriate.

Lastly, the Court notes that even if the prosecutor erred, the disputed comments were not so flagrant as to render Petitioner's trial fundamentally unfair. Furthermore, any potential prejudice to Petitioner was alleviated by the trial court's instructions that the attorneys' questions and arguments were not evidence and that the jury should only consider the evidence presented at trial in rendering a verdict. Habeas relief is not warranted on this claim.

## IV. Conclusion and Certificate of Appealability

For the reasons stated above, Petitioner is not entitled to federal habeas relief on any of the claims in his petition. Accordingly, the petition for a writ of habeas corpus is DENIED.

Before Petitioner may appeal this decision, a certificate of appealability ("COA") must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, a district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.

Having considered the matter, Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims. A certificate of appealability is therefore DENIED.

**SO ORDERED.**


  S/Avern Cohn                              
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated: November 3, 2010


I hereby certify that a copy of the foregoing document was mailed to Kamal Kittrell 276081, Huron Valley Complex - Men's, 3201 Bemis Road, Ypsilanti, MI 48197 and the attorneys of record on this date, November 3, 2010, by electronic and/or ordinary mail.


  S/Julie Owens               
Case Manager, (313) 234-5160